# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MERCEDEZ BROWN,

        Plaintiff,

v.

BROWN COUNTY, VILLAGE OF ASHWAUBENON, ST. VINCENT'S HOSPITAL, and PREVEA HEALTH,

        Defendants.

Case No. 22-CV-131-JPS

**ORDER**

On February 1, 2022, Plaintiff Mercedez Brown ("Plaintiff"), proceeding pro se, filed this action alleging that Defendants Brown County, Village of Ashwaubenon, St. Vincent's Hospital, and Prevea Health (collectively, "Defendants") violated her civil rights or acted negligently towards her and her family. ECF No. 1. Plaintiff also filed a motion for leave to proceed without prepaying the filing fee, ECF No. 2. This Order screens Plaintiff's complaint and addresses her motion for leave to proceed without prepaying the filing fee.

### 1.     MOTION TO PROCEED IN FORMA PAUPERIS

On the question of indigence, although Plaintiff need not show that she is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

In her motion, Plaintiff avers that she is unmarried, has three children, and is employed at Celerity Staffing with a total monthly income

of $2,560. ECF No. 2 at 1–2. Her total monthly expenses, which include rent, court-ordered payments, household expenses, and loans, amount to $2,820. She does not own any real estate, vehicles, or any other assets or financial accounts. *Id.* at 3–4. The Court accepts that Plaintiff is indigent. However, the inquiry does not end there; the Court must also screen the action.

**2.     SCREENING STANDARDS**

Notwithstanding the payment of any filing fee, when a plaintiff requests leave to proceed *in forma pauperis*, the Court must screen the complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint,

the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

"Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). "[L]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (quoting *Garst*, 328 F.3d at 378). "District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention." *Id.* In *Garst*, the Seventh Circuit upheld the district court's decision to dismiss a complaint that was 155 pages with more than 400 numbered paragraphs and 99 attachments. *Garst*, 328 F.3d at 379.

3.  **RELEVANT ALLEGATIONS**

Plaintiff's complaint is 49 typed pages. While this, alone, is not dispositively long, the Court's review of the complaint indicates that much of it is biographical backstory that recounts, at length, interpersonal disputes. To some extent, backstory can help contextualize legal disputes. However, too much backstory detracts from the legal analysis, and makes it difficult for the Court to identify precisely what conduct gives rise to Plaintiff's lawsuit. Below, the Court has summarized the portions of the

complaint that appear relevant to Plaintiff's claims of civil rights violations and negligence.

Plaintiff's complaint describes her relationship with her aunt, Jean, who is still heavily involved in her life. For example, Plaintiff's official address is Jean's address. Child Protective Services ("CPS") approved the placement of Plaintiff's children with Jean. Nonetheless, when Plaintiff was a child, she suffered severe abuse from many people, including Jean's husband, James. Plaintiff has told CPS about this and has objected to Jean's involvement in her children's lives.[1] While it is not clear if James is still involved in Plaintiff's life, her relationship with Jean is tumultuous and emotionally abusive. Plaintiff's son has told her that he does not feel safe in Jean's home. Notwithstanding Plaintiff's complaints to CPS, the placement continues.

Plaintiff also alleges that Lauren Saverin ("Saverin"), a case worker with Brown County, coerced her into signing a paper so that her son, J.A.B., could see a therapist. *Id.* at 12. Plaintiff says that she signed the permission form on the condition that J.A.B. not be medicated. Shortly thereafter, however, Saverin gave Plaintiff a paper to sign to permit medication, which upset Plaintiff. It is not clear from the complaint whether Plaintiff signed the medication permission. At some point, one of Plaintiff's children was prescribed a medication. *Id.* at 20. Plaintiff also complains that Saverin is a poor communicator, which results in Plaintiff missing visits with her children. *Id.* at 17–18.

---

[1] It is not clear if CPS knew about the abuse that Plaintiff experienced from James as it occurred during her childhood or whether CPS learned of it after the fact. Plaintiff alleges that CPS knew, but she also states that Jean and James never left her alone with her caseworker and monitored what she said. *Id.* at 26. In any case, it is clear that Plaintiff's abuse went unchecked.

Plaintiff also recounts how the Brown County Jail responded to her suggestions that she might be suicidal by placing her in a suicide cell and then in a suicide chair for six hours. While this appears to have been standard protocol, Plaintiff explains that it worsened her mental health and anxiety. *Id.* at 22–24. After a psychiatric evaluation, Plaintiff was released back into general population, whereupon she had an allergic reaction to black pepper. She went to the hospital, and, when readmitted to the jail, received an EPI-pen for her multiple allergies. However, her diet was not changed. It is not clear whether her other allergies were food-related or whether the black pepper could be easily avoided. She bonded out days later.

When she arrived back at her apartment, her landlord, with whom she had previously had a good relationship, evicted her. The landlord mentioned that CPS and the Brown County Police had told her things about Plaintiff. However, the landlord would not elaborate on what was said.

On June 30, 2019, Plaintiff's neighbor was stabbed and sought refuge in Plaintiff's residence. Plaintiff went outside with him, where the police and paramedics had gathered. Plaintiff's neighbor told the police what happened to him, which did not involve Plaintiff. The police asked if they could search Plaintiff's home, but she said no. The police drew their guns and roughed her up in front of her children, who were watching from a window. When one of her children opened the front door to run to her, the police pulled Plaintiff into her house and handcuffed her. She relented to signing a consent-to-search form because she wanted the ordeal to be over. The police also took her phone to search, but they never returned it. *Id.* at 28–29.

Based on this and other ordeals with the police, Plaintiff filed multiple complaints with the Ashwaubenon Police Department. She believes that they retaliated against her by filing complaints with CPS. *Id.* at 28–29. She experienced several intense investigations by CPS, paid over $3,000 in ticket citations in 2019, and suffered at least one allegedly erroneous arrest, which occurred after Plaintiff's neighbor called the police on Plaintiff because the neighbor was upset about a romantic situation. *Id.* at 30–31. It appears that this arrest resulted in charges, the outcome of which are unclear. *See id.* at 50–51. Later, Jean also received citations from Brown County. Plaintiff alleges that these citations were retaliatory and erroneous, prompted by Jean's association with Plaintiff, because they do not appear on the website rsf.greenbaywi.gov.

Later that year, on September 24, 2019, Plaintiff called the police because her infant son died. The responding police included many officers about whom Plaintiff had filed complaints. When she screamed and cried in grief, the police allegedly beat her up and arrested her. *Id.* at 32–33. The officers involved were Lieutenant Amerson, who ordered her detention, and Officer Hennessy, who put her in the squad car in handcuffs and drove her to a willow tree, where she was questioned. *Id.* Plaintiff believes that the circumstances surrounding her infant son's death are suspicious. Her son was "stuffed very deep into the side of [her] mattress. Almost as if he was shoved there." *Id.* at 34. She calls for a federal investigation of his death. After the death of her son, CPS did not check on Plaintiff until April 2020. Plaintiff faults CPS for not offering any relief to her during the difficult aftermath of her son's death.

Towards the end of April 2020, as the pandemic raged, Plaintiff struggled to make ends meet while caring for her children. One of her sons,

R.B., came down with an illness and had trouble breathing. Plaintiff called the police, who told her that R.B.'s airways were clear and counseled her that it might be a virus that will run its course. Prevea Health told her the same thing. She attempted to make appointments with her physician but to no avail. A few days later, while she was out running errands for a friend in exchange for payment, R.B.'s situation grew critical, and her other children called an ambulance. When she came home, the police officers on the scene were very judgmental towards her. R.B. was admitted to the pediatric intensive care unit at St. Vincent's Hospital. He was ultimately diagnosed with cancer. CPS began paperwork to remove Plaintiff's children from her home.

During this time, Plaintiff butted heads with the one of the nurses, Kim, who did not want Plaintiff in the intensive care unit with her son and disliked that Plaintiff kept going in and out of the ward. Eventually, the nurse called the police, who drew their guns and escorted Plaintiff out of the hospital. Plaintiff believes that she was unfairly categorized as a drug user and a bad mother.

In the summer of 2020, one of Plaintiff's friends passed away. For reasons unclear to the Court, Plaintiff believes that she knows who killed him and that the police tampered with emails and video evidence. *See id.* at 45. She requests a federal investigation of the friend's death, as well as an investigation of one of her relatives, who she believes is selling drugs with the help of the police, and an investigation of the Oneida Indian Reservation and the Menominee Indian Reservation, due to their high death rates, which she believes is drug related.

Plaintiff has several open cases in Brown County and is represented by at least three public defenders. She expresses dissatisfaction with how

the cases have progressed and believes they are being unnecessarily prolonged. Plaintiff's complaint seems to allude to a conspiracy between the police office, the public defender's office, the state courts, and possibly a cartel. *See id.* at 54.

## 4. ANALYSIS

### 4.1 Civil Rights Claims

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's pro se allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "The reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). This typically requires the government agent to have probable cause to conduct a search, which demands a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search warrant will embody the probable cause requirements; thus, warrantless searches that are conducted without consent "are per se unreasonable under the

Page 8 of 13
Case 2:22-cv-00131-JPS    Filed 05/27/22    Page 8 of 13    Document 6

Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," none of which are alleged to be present here. *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted).

The Fourth Amendment also protects individuals from excessive force during an arrest. *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022). To evaluate a claim for excessive force, a court must "consider 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (citing *Siler v. City of Kenosha*, 957 F.3d 751, 758–59 (7th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The allegations in Plaintiff's complaint illustrate a complicated and traumatic life marred by several upsetting interactions with CPS and the police. The Court gleans two instances of potential constitutional violations. First, in July 2019, when, while investigating Plaintiff's neighbor's stabbing, John Doe Ashwaubenon Police Officers drew their guns on Plaintiff (and her family), arrested her, entered her home, and subsequently forced her to consent to a search of her home. This appears to have been an unlawful search and seizure in violation of her Fourth Amendment rights.

Second, in September 2019, Plaintiff alleges that she was roughed up and restrained by the police after the death of her child. This is sufficient to allege a violation of her Fourth Amendment right to an arrest with reasonable force. However, it is not clear whether the Ashwaubenon Public Safety Department or the Brown County Sheriff's Office responded to this call. Plaintiff named Lieutenant Amerson and Officer Hennessy as being involved in this second arrest. The Court will, therefore, add Lieutenant Amerson and Officer Hennessy as defendants to the docket given their

involvement and to facilitate discovery as to Plaintiff's claims that law enforcement beat her up.

### 4.2 Negligence Claims

Plaintiff has not stated negligence claims against Prevea Health or St. Vincent's Hospital. To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). The Court may exercise supplemental jurisdiction over any negligence claims that are related to the federal constitutional violations. 28 U.S.C. § 1367.

Plaintiff has not adequately alleged a breach of any standard of care. The events involving these medical defendants arose at the beginning of the COVID-19 pandemic when mortality in the United States was climbing to a peak and hospitals were at risk of over-filling. At that time, little was known about how the virus was transmitted and whether it had any severe effect on children. Under these circumstances, which involve (1) Prevea Health counselling Plaintiff to take care of her son at home if his airways were clear; and (2) Saint Vincent's Hospital's refusal to let Plaintiff go in and out of the pediatric intensive care unit, the Court finds that Plaintiff has not adequately alleged that either defendant acted unreasonably.

Plaintiff also has not stated a negligence claim against CPS or her caseworkers. As alleged, her interpersonal disputes with her case workers do not give rise to a federal case. To the extent that Plaintiff takes issue with her son's placement with her aunt, federal courts refrain from hearing child custody matters. *Ankenbrant v. Richards*, 504 U.S. 689, 703 (1992). Additionally, as an entity, it would appear that CPS is barred from suit without its consent pursuant to the Eleventh Amendment. *See Rasheed v. Floyd Cnty. CPS*, 4:18-CV-156, 2019 WL 3208119, at *2 (S.D. Ind. 2019)

Page 10 of 13
Case 2:22-cv-00131-JPS   Filed 05/27/22   Page 10 of 13   Document 6

(dismissing Illinois CPS on Eleventh Amendment grounds). While perhaps individual caseworkers could be sued for negligence, this Court does not discern a basis for such a lawsuit based on the scattershot facts Plaintiff has presented. For example, it is not clear whether James is still in the picture, nor what Plaintiff told CPS regarding the abuse. In any case, such a lawsuit would be unrelated to Plaintiff's excessive force claim, and thus properly the subject of a separate lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").

5. **CONCLUSION**

For the reasons stated herein, Plaintiff may proceed on the following claims:

**Claim One:** A Fourth Amendment Claim against John Doe members of the Ashwaubenon Public Safety Department, for unlawful arrest and unlawful search, arising out of the incident with the neighbor's stabbing in July 2019; and

**Claim Two:** A Fourth Amendment Claim against John Doe Officers, Lieutenant Amerson and Officer Hennessy, for excessive force arising from Plaintiff's arrest after the death of her child.

The Court will add Brian Uhl, the Chief of Public Safety of the Village of Ashwaubenon, as a defendant in this matter for the limited purposes of helping to identify the John Doe defendants involved in Plaintiff's arrests. Similarly, the Court will add Lieutenants Amerson and Officer Hennessy for their involvement in Plaintiff's excessive force claim. The Court will dismiss Brown County, the Village of Ashwaubenon, Prevea Health, and St. Vincent's Hospital from the case. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996).

Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service by the U.S. Marshals Service if a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See Williams v. Werlinger*, 795 F.3d 759, 760 (7th Cir. 2015). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the Court to order service by the U.S. Marshals Service because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. Thus, the Court will allow Plaintiff to elect, within **fourteen (14) days**, whether she desires service by the U.S. Marshals Service or whether she will obtain service of her own accord. If Plaintiff wants to effect service herself, she should simultaneously file a request for the Clerk of the Court to issue service packets to her.

**The Court warns Plaintiff that if she fails to comply with this or any of the Court's orders, her case will be dismissed without further notice for failure to prosecute.**

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Brown County, Village of Ashwaubenon, Prevea Health, and St. Vincent's Hospital be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the Clerk of Court add Brian Uhl, the Chief of Public Safety of the Village of Ashwaubenon, as a defendant in

this matter for the limited purposes of helping to identify the John Doe defendants involved in Plaintiff's arrests;

**IT IS FURTHER ORDERED** that the Clerk of Court add Lieutenant Amerson and Officer Hennessy as defendants in this matter in light of Plaintiff's excessive force claim; and

**IT IS FURTHER ORDERED** that Plaintiff shall file, within **fourteen (14) days**, a notice indicating which method of service she desires.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge